UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

JUAN PABLO RAMIREZ PUGA,

Petitioner,

v.

JASON KINGHT, Field Office Director Of Enforcement and Removal Operations, Salt Lake City Field Office, Immigration and Customs Enforcement, KENNETH PORTER, Acting Director, of the Boise U.S. Immigration and Customs Enforcement Field Sub-Office; MARKWAYNE MULLIN, Secretary, U.S. Department of Homeland Security, TODD BLANCHE, U.S. Attorney General, JARROD THOMPSON, Sheriff of Cassia County,

Respondents.

Case No. 1:26-cv-00507-DCN

**MEMORANDUM DECISION AND ORDER**

## I. INTRODUCTION

Before the Court is Petitioner Puga's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 (Dkt. 1) and Motion for Temporary Restraining Order ("TRO") (Dkt. 2).

The Court expedited briefing on the matters. Dkt. 4. The Government opposes Puga's Petition. Dkt. 5. Upon review, and for the reasons set forth below, the Court DENIES Puga's Petition and denies the TRO as MOOT.[1]

[1] Puga has also filed a Motion to Seal. Dkt. 8. These exhibits contain personal identifying information and otherwise do not require public disclosure. Accordingly, the Motion to Seal is GRANTED and the documents so identified will remain under seal.

## II. BACKGROUND

Puga is a Mexican national who has lived in the United States since his entry without admission in 1995. Puga has two United States citizen children, and his mother is a permanent resident. Immigration and Customs Enforcement ("ICE") took Puga into custody—along with multiple other individuals—while he was performing community service for DUI that occurred in June 2026.

On August 6, 2026, Enforcement and Removal Operations Boise ("ERO") placed Puga in removal proceedings by issuing and serving him with a Notice to Appear ("NTA"), a Form I-286 Notice of Custody Determination, and explaining his right to seek review by an immigration judge.

## III. DISCUSSION

The Court has addressed countless immigration-habeas petitions over the last year, all relating to the detention provisions at §§ 1226(a) and 1225(b)(2). Until recently, ICE treated every noncitizen who entered without inspection as subject to mandatory detention under § 1225(b)(2)(A)—regardless of when they were apprehended or how long they had lived in the United States. The Ninth Circuit has now definitively ruled that § 1226 applies to unadmitted aliens present in the interior of the country, while § 1225 applies to unadmitted aliens entering the United States at the border. *See Rodriguez Vazquez v. Bostock*,183 F.4th 1160, 1193 (9th Cir. 2026).

Puga asserts he was initially detained under § 1225. And by all accounts he was, because that is how the Government viewed the detention of noncitizens at that time. The Government suggests Puga's detention has essentially been converted into a § 1226 case

at this point because ERO Boise has followed the procedures as outlined in *Rodriguez Vazquez*. Under the circumstances, the Court agrees.

To determine whether a due process violation occurred, the Court begins with the regulatory framework governing an alien's initial detention and custody determination under § 1226(a). The Immigration and Nationality Act authorizes the Government to arrest and detain an alien who is subject to removal from the United States. §§ 1226(a), 1357(a)(2). The regulations governing an alien's detention following arrest provide different procedures depending on whether the arrest was made pursuant to a warrant.[2] A noncitizen detained without a warrant must receive an initial custody determination within 48 hours of arrest, absent an emergency or extraordinary circumstance. 8 C.F.R. § 287.3(d). The alien will be released if he "demonstrate[s] to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." 8 C.F.R. § 236.1(d). If the alien is denied bond, or was arrested pursuant to a warrant, he can seek an individualized bond hearing before an immigration judge at any time before a final order of removal. *Id*.

Whatever the propriety of Puga's initial detention under § 1225(b)(2)(A), the record establishes ICE has now made an initial custody determination and served Puga with a Form I-286 and NTA.[3] It appears, however, this lawsuit halted those processes.

Puga is entitled to the process due under the statute. As a noncitizen detained under

---

[2] It is unclear whether Puga was arrested with or without a warrant. Because Puga does not challenge the actual arrest, the Court does not address it here.

[3] Even if the Court were to find an *initial* due process violation under the § 1225 framework, the remedy would simply be release. And once released, Puga would presumably be re-arrested by ICE under § 1226. There is no need to undertake a process that will result in the same outcome.

§ 1226(a), this includes the statutory right to a bond hearing. *See Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018) ("Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention.") (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)).

For his part, Puga claims ICE's efforts here are little more than a "meaningless shuffle in place," *see* Dkt. 7, at 2, whereby they have shifted some of their procedures to conform with *Rodriguez Vazquez* but, in the long run, the result is the same: people in custody. Puga also claims his Form I-286 requiring continued detention is wholly unsupported because he has a minimal criminal record.

As for the first assertion, the Court agrees in part. Certain individuals are still in custody. However, they are now detained under the appropriate statute and with the appropriate parameters in place. The Court has long held ICE's interpretation of § 1225 was incorrect. The Ninth Circuit has now confirmed as much. However, insofar as ICE is following the parameters outlined in *Rodriguez Vazquez* and acting consistent with its statutory obligations under § 1226, it can detain people—even those who were originally (and briefly) detained pursuant to § 1225.

As for the second assertion, Puga will have to take up any disagreement with the Form I-286 determination via a bond hearing or redetermination hearing before an Immigration Judge. The Court notes, however, that Puga has multiple prior DUI and driving related convictions. Dkt. 5, at 3.

In short, the Court finds it appropriate to remand this matter to ICE to allow the statutory process to proceed. If appropriate and desired, Puga can request a bond hearing

and, if necessary, appeal. However, because the administrative process has not concluded, the Court cannot find Puga's Due Process rights have been violated.

If, after the administrative process concludes, Puga feels his rights were violated, he retains the ability to file suit and seek review. But this case, based on these facts, has concluded.

## IV. ORDER

1. Puga's Petition for Writ of Habeas Corpus (Dkt. 1) is DENIED.
2. This case is remanded to ICE for further proceedings.
3. Puga's Motion for Temporary Restraining Order (Dkt. 2) is DENIED AS MOOT.
4. Puga's Motion to Seal (Dkt. 8) is GRANTED.
5. This case is CLOSED.

DATED: October 26, 2026

David C. Nye
U.S. District Court Judge